JOSEPH FORSYTH AND EZEKIEL SIMPSON, APPELLANTS, vs. GEORGE PERRY, APPELLEE.

1. In all relations and in all matters, except as to crimes, a slave is regarded by our law as property; and therefore the rule that the principal is not liable to one agent, or employee, for damages occasioned by the negligence or misconduct of another agent or employee, is not applicable to slaves.

2. The contract of hiring of a slave, between the owner and the hirer, constitutes a bailment of the slave, and the hirer is bound to take ordinary care of him.

Appeal from a judgment of the Circuit Court for Santa Rosa County.

This was an action of trespass on the case, instituted by the Appellee, to recover the value of a negro slave, who

42

was drowned in the attempt to execute an order of the Mate of a Steamboat belonging to Appellants. The negro slave was hired to the Appellants, to be employed as a hand on board their Steamboat, and whilst in their employ the order was given which resulted in the loss of the slave to the Appellee.

*Campbell* for Appellants :

Both the mate and the negro being in the employ of the Appellants, and engaged in the same business, and the loss of the negro having been caused by the misconduct of the mate alone, the action cannot be maintained. Story on Agency, 564, 565, 566, 567, 568 ; Priestly vs. Fowler, 3 Mees. & Welsb. 1 ; Farwell vs. Boston & Worcester R. R. Co., 4 Met., 49.

The law is that the master is liable to *third* persons for the misfeasances, negligences and omissions of duty of his servants and agents. Story on Agency, 564. But according to the above authorities, where one servant is injured by another engaged in the same service, and whilst transacting the business of the common master, the servant, so injured, is not such third person as to bring the master within the rule. The servant's remedy in such a case is against the wrongdoer himself.

With regard to injuries to third persons, the responsibility of the master springs from the duty he owes to society so to conduct his business that third persons shall not be injured thereby. But there is no obligation on the part of the master that the agent or servant shall suffer no injury from the negligence of others employed in the same service. The relation of the parties is created by contract, with a full knowledge of the risks and responsibilities of the business ; and it is to be presumed that those risks and responsibilities are provided against by the contract.

The law of Master and Servant applies to this case, and not that relating to the hiring of chattels. Story on Bailment, 571, '72; Boyce vs. Anderson, 2 Peters' R., 150.

As between a master and his slave, the latter is property, and nothing but property; but he may, as to third persons, occupy the same relation as a freeman. There is no difference between the relation which a slave, employed as a mariner, holds to the owners and officers of a ship, and that existing between the latter and a freeman before the mast. In the case of Booth *et al.* vs. Schooner L'Esparanza, Bee. Rep., 92, it was held that a master could sue in the District Court of the U. S. for the wages of his slave as a mariner.

The true test of the responsibility of the Appellants is, whether the owners of a vessel are responsible for injuries received by a sailor, in consequence of the negligence or misconduct of the mate. To apply any other would be to throw greater safeguards around the person of a slave than a freeman, and to permit the master to enjoy the profits of an avocation, and yet relieve him from an important risk incident to it—the danger to his property from the misconduct of subordinates.

*Hawkins* for Appellee:

*First.* Forsyth and Simpson are liable by force of the general rule, that the principal is liable *civilter*, in all cases, for the negligence, misfeasance, malfeasance or omissions of duty on the part of his agent, in the course of his employment, although the principal did not know of, or authorize or participate in the act, &c.

The principle of *respondeat superior* is founded on public policy, justice and convenience. See Story on Agency, 554, 555, § 452.

2. Perry, as to Forsyth and Simpson, must be considered as a *third person :* he did not hire *himself*—he hired his *property.*

Negro slaves are regarded as *property* in all civil suits ; as *persons,* only when held amenable for crimes. 5 S. & M., 609 ; 6 How. Miss. R., 35.

3. Being property, reasonable care should have been had of the slave hired. See Boyce vs. Anderson, 2 Pet. U. S. R., 150 ; 4 Porter, 434.

The exception to the general rule, viz : where different agents are employed in the same business of a common employer, in case one agent receives an injury from a *co-agent,* he must seek his redress against that co-agent and not against the principal or common employer, has no appli-tion here. Story on Agency, 564.

*First.* Because, as before stated, the hiring of the slave was a bailment, the "*locatio conductio rei,*" with ALL its incidents, attributes and responsibilities.

*Second.* Because the negro was under the direction and control of the captain of the boat, an *employee,* and the agent of Forsyth and Simpson. (See *Ohio case,* where the co-agent was free and not a slave ;—this, therefore, is an *a fortiori* case.—Newspaper.)

*Third.* The exception to the rule applies to *persons* and not to *property.*

The negro slave cannot hire himself—possesses no free-will, option or discretion as to his employment ;—he can-not, if he would, leave the service of his employer in case of harsh treatment. He cannot be a spy or check upon the other *employees,* give notice of their dereliction from duty, or correct it in any way.

A slave cannot be *an agent.* The exception contem-plates free white agents, *ex-necessitate rei.* Interest of the owner, and humanity to the slave, forbid the application

of the rule as contended for. See Scudder vs. Wood-bridge. 1 Georgia Rep., 195.

SEMMES, J., delivered the opinion of the Court:

This was an action of trespass on the case, brought by the respondent against the appellants, as owners of the Steamboat " General Hamer," to recover the value of a negro slave, the property of respondent, and who was hired on board said boat, and alleged to have been lost through the carelessness and misconduct of the mate. The slave was ordered to jump on board said steamer from a flat-boat laying along-side. In the attempt to do so, he struck the guards of the steamer, fell into the water and was drowned.

On the trial of the cause, upon the plea of the general issue, the Court below instructed the jury—*First*, That a principal is liable civilly for any act of his agent, when there was negligence, if done within the scope of his authority ; and, *Secondly*, That if the jury were satisfied that the mate was in the employ of the defendants, and he gave an order to the slave which no ordinarily prudent man would have given, and that in consequence of this order the negro was lost, they should find for the plaintiff; but if, on the contrary, they were satisfied that the order was not an unusual one, under the circumstances, and that there was not gross negligence in giving the order, they should find for the defendants.

The jury returned a verdict for the respondent, and thereby established the fact of gross negligence on the part of the mate in giving the order which resulted in the death of the slave.

Appellants' counsel, in excepting to the charge of the Court, contends, that the right of action was against the mate, and not the owners of the boat; that by reason of

the mate and the slave being at the time in the employ of the Appellants, and engaged in the same business, and the loss of the slave having been caused by the misconduct of the mate alone, this action cannot be maintained.

The rule of law cannot be questioned, that *civiliter*, the principal is liable to *third* persons for the misfeasances, negligences and torts of his agent, in the course of his employment, though he did not authorize, justify or participate in the act, or misconduct of the agent. In all such cases, says Judge Story, the rule applies, *respondeat superior*, and it is founded on public policy and convenience. Story on Agency, § 452. The justice and propriety of maintaining this responsibility on the part of the principal, results from the implied guaranty on his part, not only as to the qualifications of the agent, but that within the scope of his agency he will act with fidelity and a due regard to the rights of others. The force and application of this principle is sought to be evaded in argument, by insisting that the owner of the slave is not to be considered in the light of a third person, entitled to compensation for his loss against the Appellants ; and the exception to the rule is relied on, as supporting this view of the relative rights and liabilities of the parties to this suit. The exception is, that when different agents are employed in the same business, the principal is not liable for any injury done to one agent by another agent, while engaged in the same common employment, and the reason assigned is, that the mere relation of principal and agent creates no contract, and therefore no duty on the principal that the servant or agent shall suffer no injury from the negligence of others employed by him in the same business, and that in such cases the servant or agent takes upon himself the hazard of every such injury, and his remedy, therefore, lies

solely against the immediate wrong-doer. Story on Agency, § 453.

The principle here asserted is doubtless as true as the rule itself. But while the facts of this case bring it within the rule, they necessarily exclude it from the exception. The effect of the argument, as will be seen, is to destroy the identity of the slave, and substitute the owner in his place. But the owner does not hire himself. He is not in the employ of the party, and in no light can he be regarded as his agent. The sole relation he occupies to the common employer is, as bailor of the property, and his right of action for any wrong done the slave, either against the immediate wrong-doer or his principal, grows out of the fact that the slave is property and he the owner. The words Servant and Agent, used in the exception to the rule, and in the authorities relied on, are relative terms, and must, in the very nature of things, have no reference to free white persons ; for it cannot be seriously contended that a slave is to be considered, in any legal sense, the agent of his employer. In a limited sense, it is true, he is a servant, but he certainly does not occupy the higher relation of agent. The doctrine of agency is founded upon reciprocal rights and duties. The slave has none of these. The fact of his being a slave, places him beyond the opertion of this law. The very position he occupies, and is recognized by the law, renders it impossible to embrace him within that class of persons referred to. Unlike white persons, the slave does not, upon entering into the service of another, voluntarily incur the risks and dangers incident to such service. He has no power to guard against them by refusing to incur the peril, or by leaving the service of his employer. He is but a passive instrument in the hands of those under whose control he is placed.

The exception to the rule applies to *persons* necessarily

—those who are competent to contract, and who, while they are responsible for the consequences of their own misconduct, have the same rights and remedies as their co-agents. Why comprehend slaves, when it is manifest they have none of those rights or remedies against others, and are not liable in a civil suit for their own acts and misconduct? In all relations, and in all matters, except as to crimes, the slave is regarded by our law as *property ;* and being so considered, the case before us is governed by the law of bailments. The contract of hire in this case, constituting a bailment of the property, and it being reciprocally beneficial to both parties, something more than mere *good faith*, on the part of the bailee, is requisite. The owners of the boat were bound to take ordinary care of the slave, and failing to do so, through their agent, they are responsible for the consequences.

The fact of the slave being a human being, while it does not impair the rights of the owner, would rather increase than diminish the liability of the employer.

In the case of Boyce vs. Anderson, 2 Peters' R., 156, Chief Justice Marshall, in delivering the opinion of the Court, says, " Supposing the strict rule introduced for gen-" eral commercial objects does not apply to the conveyance " of slaves, the ancient rule, 'that the carrier is liable only " 'for ordinary neglect,' still applies to them." In this case, the jury have found gross negligence, on the part of the mate, in his conduct to the slave, which would render the employers liable in any event.

Apart from the views we have presented, considerations of public policy, the interest of the master, and humanity to the slave, require that he should be excluded from the exception to the rule, and that he should be shielded from the unrestricted control and oppression of irresponsible subordinates. The liability of the employer, *civiliter*, for

the misconduct of his subordinates, will naturally add to the personal security and protection of the slave. Public policy emphatically demands, that the owners of boats, railroads, and other public conveyances, should employ careful and capable agents in their respective business.

Let the judgment of the Court below be affirmed.