ROBERT HOWES *v.* STEAMER RED CHIEF, CAPTAIN AND OWNERS.      | 15 | 321 |
                                                             | 104 | 160 |

The maxim, *qui facit per alium, facit per se,* applies with equal force to owners of steamboats, who are
  liable to third persons in civil suits for the frauds, deceits, concealments, misrepresentations, torts,
  negligences and other malfeasances or misfeasances, and omissions of duty of their agents in the
  course of their employment, even if they forbade the acts or disapproved of them.  In all such cases
  the rule, *respondeat superior* applies.
The rule, that the master is not responsible to one agent, for the injury he has sustained through the
  negligence or omission of duty of another agent, does not apply to the case of hired slaves.  And
  where a slave was hired, as deck-hand, to a steamboat and drowned through want of care on the
  part of the mate—*Held :*  That the captain and owners were responsible.
The 9th section of the Act entitled " An Act relative to steamboats," approved March 15th, 1855,
  embraces all cases of loss or damage arising from carelessness, neglect or want of skill in the direc-
  tion or management of any steamboat and cannot be restricted to cases of collision.  Nor is it under
  the act necessary to swear as to the names of the owners in order to proceed by provisional
  seizure.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J.
*Whittaker & Fellows,* for plaintiff and appellant.  *Lea & Marr,* for defen-
dants.

DUFFEL, J.  The present action, which has for its object the recovery of the value
of a hired slave, who was drowned in the employ of the defendants, commenced
by a provisional seizure of the steamer Red Chief, under the provisions of the
act, entitled " An Act relative to steamboats," approved March 15th, 1855, p.
468.  The provisional seizure was set aside by the District Judge, on the ground
that the act had reference to loss by collisions only.  The plaintiff then applied
for, and obtained, the defendants being non-residents, a writ of attachment, under
which the boat was attached by the Sheriff.  The District Judge set aside this
attachment, being of opinion that the writ did not lie in cases of torts, and a judg-
ment of nonsuit followed.

The plaintiff being dissatisfied, appealed from the above rulings and judgment
of the lower court.  The two appeals were, by consent, consolidated.

We will assume, for the purposes of this case, as the point was not contested,
that the presumption of law, arising from the non-delivery of the object in cases
of bailment, has no application to slaves ; and that the *onus probandi* of the loss
of a slave, through the fault of the hirer, lies on the plaintiff.  *Downey* v. *Stacey
et al.* 1 An. 426.  It is, we think, conceded, and the evidence is ample on this
point, that the slave Tom, the property of the plaintiff, was drowned while under
the employ and charge of the defendants.  The value of the slave is also proved,
the same being fifteen hundred dollars.

The evidence, which is contradictory on some material points, may be summed
up as follows :  The steamers Red Chief and Judah Touro were, on the 5th of
June, 1858, lying, side by side, at the foot of Canal street, the Touro occupying
the outside position ;  the distance between the two boats was from three to four
feet, and there was a large quantity of produce to be transferred from the Judah
Touro to the Red Chief.  To facilitate the transfer of the freight a stage was
made, consisting of two planks, of about six feet long, placed about two feet apart
from each other ;  the planks were not made fast ;  they rested across the chock of
the Judah Touro where there was nothing to hold them, the other ends rested on
the Red Chief where there was nothing to prevent them from slipping.  The

41

Howes
v.
Sbt. Red Chief.

guards of the Touro were from six to eighteen inches higher than those of the Red Chief. The boats were not so moored to the wharf as to be steady, being disturbed and moving up and down, whenever other boats passed up and down the river ; the wind was blowing at the time and showers of rain falling occasionally ; it was slippery. The Touro had unfastened her head line, and worked her engines occasionally, there was no line to hold the two boats together at first, and the one which was afterwards used was not made tight enough for the purpose. One of the planks above described had, about fifteen minutes before the drowning of the slave, slipped off, whereby a barrel of flour went overboard. The above facts are taken from the testimony of *Greegor*, late mate of the Judah Touro, *Richardson*, acting mate of the same boat, and her engineer *Ruter* ; they were on the spot, had all the means of judging ; and the two first, being men of experience in such matters say, without hesitation, that the stage was insufficient, insecure and unsafe ; such also is the opinion of *Captain Ure*, from his description of a proper stage. The testimony and opinion of the other witnesses are not of a nature to weaken the other testimony or to throw doubts on our minds. It further appears that the slave Tom, who was at the time engaged in carrying sacks of corn from the Touro to the Chief, was first seen in the river, between the two boats, with one of the planks of the stage and a sack of corn floating alongside of him. He was not seen by any of the witnesses in the very act of falling, but we are satisfied from the evidence that he was precipitated into the river while crossing the staging with a sack of corn, and in consequence of the sudden fall of the plank ; any other conclusion would be a forced one. After a careful consideration of all the facts and circumstances of the case, apart from the individual opinion of the witnesses, we conclude that the stage made, by the mate of the Red Chief, was apparently defective, insecure and dangerous, and indicated a want of ordinary care, attention and foresight in its construction. We also conclude that the slave Tom was the unfortunate victim of such want of ordinary care, attention and foresight.

The maxim, *qui facit per alium, facit per se*, applies with equal force to owners of steamboats, who are liable to third persons in civil suits for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances, or misfeasances and omissions of duty, of *their* agents in the course of their employment, even if they forbade the acts or disapproved of them. In all such cases the rule, *respondeat superior*, applies ; and it is founded upon public policy and convenience. Story on Agency, Nos. 451, 452.

But it is contended that the same rule does not apply to cases of different agents, employed by the same principal, where one, by his negligence, or omission of duty, causes an injury to the other. As a general proposition, we admit that this is one of the exceptions to the general rule, and the reason assigned is " that the mere relation of master and servant, or principal and agent, creates no contract, and therefore no duty, on the part of the principal, that the servant or agent shall suffer no injury, from the negligence of others, employed by him in the same business or service ; and that, in such cases, the servant or agent takes upon himself the hazards of any such injury, which may arise in the course of such business or employment ; and his remedy for any such injury, by the misconduct or negligence of a fellow-servant or agent, lies solely against the wrong-doer himself." Story on Agency, No. 453. In the case of *Priestley* v. *Fowler*, 3 Mees. & Weisl. 1, Lord Abinger said, " But in truth, the mere relation of the master and the servant never can imply an obligation, on the part of the master, to take more care

of the servant than he may reasonably be expected to do of himself. He is, no doubt, bound to provide for the safety of his servant, in the course of his employment, to the best of his judgment, information and belief. The servant is not bound to risk his safety in the service of his master, and may, if he thinks fit, decline any service, in which he reasonably apprehends injury to himself; and in most of the cases, in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it as the master," and in the case of *Farwell* v. *the Boston and Worcester Railroad Corporation*, 4 Metc. R. 49, Mr. Chief Justice Shaw said : "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service, if the common employer will not take such precautions, and employ such agents, as the safety of the whole may require." And again, " In considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience, and to draw from them such rules as will, in their practical application, best promote the safety and security of all parties concerned." *Elizabeth Hubgh* v. *N. O. and Carrollton R. R. Co.* 6 An. 496. What was the contract between the plaintiff and the defendants ? The former hired his slave as a fireman, or deck hand, for a given time, and for a fixed price. C. C. 2639, 2662 ; the latter undertook, from the very nature of the contract, to enjoy the thing leased as a good administrator, to feed, maintain, protect and defend the slave, to exercise full control over him, and to render an account of his stewardship. C. C. 2680. We have under our State jurisprudence two species of contracts of letting and hiring, to-wit : 1st. The letting out of things ; 2d. the letting out of labor or industry. C. C. 2643. The letting out of labor or industry is a contract by which a free person hires his own time and services. C. C. 2716. "Labor may be let out in three ways : 1st. Laborers may hire their services to another person ; 2d. carriers and watermen hire out their services for the conveyance either of persons or of goods and merchandise ; 3d. workmen hire out their labor or industry to make buildings or other works." To let a thing out is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated rent or hire which the other binds himself to pay. C. C. 2644 ; and of this nature is the hire of slaves, C. C. 2695.

We will not discuss the *status* of a slave ; he is responsible to the State for his crimes, but in all other respects he is a passive being, an immovable by the operation of law—C. C. 461 ; he is entirely subject to the will of his master, who may correct and chastise him—C. C. 173 ; he is incapable of making any kind of a contract—C. C. 174 ; " In all relations, and in all matters, except as to crimes, a slave is regarded by our law as property." *Forsyth* v. *Perry*, 5 Florida, 337. "And in a contract of hire, constituting a bailment of the property, the hirer is bound to take ordinary care of the slave, and is liable for ordinary negligence." Same case. As there could not, from the nature of the case, exist a privity of contract between the slave of the plaintiff and the defendants, it follows that the relations of the slave Tom and the free servants, towards the defendants, and *vice versa*, were not the same, and must, by the force of the case, be governed by different rules, for it is apparant, that the reasons of the exception made in favor of the master against the action of his servants, can not here be invoked, in as much

as the slave is bound to risk his safety in the service of his master, cannot decline any service, still less leave the service, but is wholly, absolutely and unreservedly under the absolute control, nay caprice of his master. Again, how could a free servant hold the owner of a slave responsible for an injury occasioned by the want of skill of a slave in the performance of a duty peremptorily required of him by his superior, under the rule that the reparation is due by the wrong-doer and not by the common master? We can readily comprehend that the plaintiff, in his contract, took upon himself the ordinary risks of the dangers of navigation, but we cannot give our assent to the proposition that he has no recourse against the defendants for the loss of his property occasioned by the fault of their agents. The usual carelessness of steamboat-men, and unfortunately the too little value which is often set on human life, should not be a means of defence, but rather a forcible reason, in the interest of the community at large, not to enlarge the exceptions to the general rule which fixes the liability of the master for the acts of his agents. As the slave Tom was not the agent of the defendants, as the plaintiff did not occupy that relation, and as the property of the plaintiff, committed to the charge of the defendants, might have been preserved with ordinary prudence on the part of the mate, who was the agent of the defendants, it follows that the latter must indemnify the plaintiff.

The liability of the defendants being thus fixed, it becomes necessary to determine if the provisional seizure and attachment of the steamer Red Chief were properly discharged and released. The two writs were applied for, and obtained, under the 9th section of the Act entitled " An Act relative to steamboats," approved March 15th, 1855, p. 468, which provides " That in all cases where any loss or damage has been caused to the person or property of any individual by any carelessness, neglect, or want of skill, in the direction or management of any steamboat, barge, flatboat, water-craft, or raft, the party injured shall have a privilege, etc., upon such steamboat, etc., for the amount of the loss or damage sustained, and may proceed by attachment, or *in rem*, to recover the same. Before so proceeding, he, or if he be absent, his agent, or attorney, shall swear to the amount of the loss or damage sustained, and file a bond with good and sufficient security in favor of the owners of the steamboat, etc., whomsoever they may be, whether their names be known or not, for a sum exceeding by one-half the amount of that which is claimed as a security for the payment of such damages as the owners may recover against him, etc."

This section is full and comprehensive, embracing all cases of loss or damage, resulting from carelessness, neglect or want of skill in the direction or management of any steamboat, and cannot be restricted to cases of collisions, nor was it, under the Act, necessary to swear as to the names of the owners, in order to proceed by provisional seizure, or in the words of the Act, " *in rem*." The word " *collision* " is not to be found in the original Act, Acts of 1853, p. 159, and the marginal note of section 9, which marginal note does not constitute a portion of the Act, is as follows : "Privilege for damages caused by collision, etc.," thus repelling the restriction placed by the District Judge.

The doctrine that no attachment can issue in actions of tort, is too firmly settled to attempt to disturb it. 12 R. 565, 2 An. 943, 3 An. 376, 4 An. 63, 12 An. 110, but we are of opinion that the very object of the Act of 15th March, 1855, was to authorize the issuing of the process for damages, in all the enumerated cases of the statute. The very language of the Act indicates it, were it otherwise, its object would, in most instances, completely fail.

It is, therefore, ordered, adjudged and decreed, that the judgments of the District Court be reversed; and it is now further ordered, adjudged and decreed, that the writs of provisional seizure and attachment, and the provisional seizure and attachment of the steamer Red Chief under the same, be reinstated: It is further ordered, adjudged and decreed that the plaintiff have judgment against the defendants for the sum of fifteen hundred dollars, with legal interest thereon from the 5th of June, 1858, till paid, and the costs of both courts, and with privilege on the said steamer Red Chief, her tackle, apparel, furniture, fixtures, etc. And that this judgment be satisfied by the sale for cash, and according to law, of the property provisionally seized and attached, to-wit: the steamer Red Chief, her tackle, fixtures, etc., etc.